**Opinion issued July 28, 2026**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-25-00182-CV**

———————————

**ANAM ASLAM SHAIKH, D.O., Appellant**

**V.**

**IRMA M. RODRIGUEZ, Appellee**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 24-DCV-315625**

---

## MEMORANDUM OPINION

This case involves diabetes, the prescription of prednisone to a diabetic, and the side effects that can befall a diabetic who takes prednisone. Evidence in the record indicates that use of a corticosteroid, like prednisone, by people with diabetes

can impact blood glucose levels and result in vision loss, so careful monitoring of those glucose levels is required.

Irma Rodriguez suffers from diabetes and allegedly experienced retina detachment after Dr. Anam Aslam Shaikh, a rheumatologist, prescribed prednisone to her. Rodriguez filed a medical malpractice action against Shaikh, alleging that Shaikh's negligence in prescribing prednisone caused her vision problems. After Shaikh objected to Rodriguez's first expert report and the trial court limited that report "to causation only," Rodriguez served Shaikh with two additional expert reports. Shaikh objected to the new reports and moved to dismiss the case, but the trial court overruled the objections and denied the motion to dismiss.

In one issue, Shaikh argues that the trial court erred in denying her motion to dismiss because Rodriguez's two experts—an ophthalmologist and a critical care physician—were not qualified to opine on the standard care applicable to a rheumatologist treating a patient's rheumatological condition, and therefore Rodriguez failed to serve an adequate expert report.

We affirm.

## Background

Irma Rodriguez has type 2 diabetes and cataracts. In early 2022, she began experiencing pain in her shoulders, hand, and lower back due to a rheumatological condition called polymyalgia rheumatica. She started seeing Dr. Anam Shaikh, a

rheumatologist, in March 2022. Shaikh prescribed prednisone, a corticosteroid. Several months later, in August 2022, Rodriguez's vision problems became more severe: her cataracts worsened, and she experienced diabetic retinopathy, leading to vision loss in one eye.

Rodriguez filed a negligence action against Shaikh. She alleged that her "diabetes had remained well-managed until the events leading to the current complaint." But Shaikh "prescribed Prednisone without implementing the requisite adjustments in [Rodriguez's] diabetes management plan or ensuring vigilant monitoring of blood glucose levels." Shaikh also "failed to prescribe other non-corticosteroid medications as the first line of treatment instead of Prednisone." As a result, "[t]his oversight led to a failure in controlling [Rodriguez's] blood glucose levels in the context of corticosteroid therapy." Rodriguez later amended her petition to assert that Shaikh was negligent for failing to obtain Rodriguez's informed consent regarding the risks of prednisone, "such as increased blood sugar levels that could lead to vision loss."

To support the lawsuit, Rodriguez filed an expert report by Dr. Matthew McMenemy, a board-certified ophthalmologist. McMenemy began his report by stating his qualifications:

> I am a board-certified ophthalmologist with Lone Star Eye Care in Sugar Land, Texas, a full-service ophthalmology practice offering medical eye care, complete cataract care and LASIK Laser Vision Correction, as well as routine eye exams and a full-service optical shop.

I have extensive experience in performing cataract surgery, LASIK Laser Vision Correction, and providing glaucoma care. I have been caring for patients in the Sugar Land area for more than 20 years. I am also affiliated with Methodist Sugar Land Hospital. I received my medical degree from University of Texas Medical School and have been in practice for more than 30 years. Personally, I am very familiar with the effect that certain medications, like prednisone, can have on diabetic patients like Ms. Rodriguez, and believe I am qualified to render the opinions in this report.

McMenemy provided a summary of the care Rodriguez received. He then stated that the standard of care required a cautious approach to prescribing prednisone to a diabetic, because of the "known potential of corticosteroids to significantly impact blood glucose levels," and required a prescribing physician to warn the patient "about these effects." Further, the standard of care "under the circumstances (management of a diabetic patient with symptoms of RA [rheumatoid arthritis])" required a physician to "first consider medications that do not contain steroids (such as Humera or methotrexate)" and to consult with an endocrinologist before prescribing prednisone. He found a breach of the standard and concluded that "the medical mismanagement of Ms. Rodriguez's diabetes . . . directly resulted in profound and irreversible harm to her vision."

Shaikh objected to the report and argued that McMenemy is not qualified to talk about the standard of care, because he "treats patient's eyes and related conditions," unlike Shaikh, who "treats musculoskeletal diseases and systemic

autoimmune conditions." The trial court agreed with Shaikh up to a point. The court ordered that McMenemy's expert report would be limited to causation only.

Rodriguez then provided an amended report by McMenemy, and she submitted a supplemental report from a second expert, Dr. Alex Lechin. McMenemy's amended report again addressed his experience with corticosteroids and diabetic patients, restating that he is "very familiar with the effect that certain corticosteroids, like prednisone, can have on diabetic patients like Ms. Rodriguez." He also refined his opinion on the standard of care, stating that the standard required Shaikh to communicate with Rodriguez and her primary care doctor or a specialist "about the importance of monitoring blood glucose levels in the context of corticosteroid therapy." The standard also required "careful coordination of care to ensure the patient's blood sugar levels are being closely monitored on a regular basis," and Shaikh, as the prescribing physician, "was responsible for ensuring that blood sugar levels were regularly monitored on a daily basis to protect the patient from adverse effects of corticosteroids."

Next, the report by Lechin began by stating that he is board-certified in critical care, internal medicine, pulmonary medicine, and sleep medicine. His report went on to lay out his experience with prescribing corticosteroids for diabetic patients who have autoimmune diseases:

> I am qualified to render opinions regarding standards of care, breach of the standard of care, and causation as it pertains to the diagnosis,

management, of diabetic patients like Irma Rodriguez. I am qualified to give these opinions based on my education, training, knowledge, and experience as a board-certified internal medicine and critical care physician with over 36 years of experience regularly treating patients requiring chronic use of corticosteroids[FN] to manage autoimmune conditions. I have for many years managed these conditions and prescribed corticosteroids for diabetic and non-diabetic patients with autoimmune diseases. I am very familiar with the standards required of a provider who prescribes corticosteroids, including requirements to coordinate care and consider alternative course of treatment to reduce the risk of side effects of corticosteroids on diabetic patients with autoimmune diseases.

Dr. Shaikh prescribed prednisone to treat polymyalgia rheumatica. This is a condition that is not exclusively managed by Rheumatologist[s] and can also be managed by primary care physicians or internal medicine specialists. Polymyalgia Rheumatica (PMR) is a common autoimmune disease, and depending on prevailing clinical practices can often fall under the purview of a generalist.

[*FN*: Prednisone is a corticosteroid.]

He agreed "with the standards of care outlined in Dr. McMenemy's report and incorporate[d] them by reference." He added that the standard of care required Shaikh—who knew Rodriguez was diabetic—"to consider medications that do not contain steroids," advise Rodriguez on an alternative course of treatment, instruct her to stop taking prednisone upon learning of her vision loss, regularly monitor Rodriguez's blood sugar levels on a daily basis, and inform Rodriguez "about the risk of retina detachment due to uncontrolled blood sugar levels that are linked to taking prednisone."

His report then found a breach of the standard of care. In that respect, his report explained the breach as follows:

> Despite the obvious spike in blood sugar levels, Dr. Shaikh continued to prescribe prednisone.
>
> More importantly, the records do not show any indication that Dr. Shaikh obtained informed consent from the patient. A boilerplate warning of general effects of prednisone in the records is not enough. There was no documentation that Dr. Shaikh had a conversation with the patient about the risk of retinal detachment. This is what the standard of care requires of any provider prescribing corticosteroids.

Shaikh objected and sought dismissal a second time, arguing that neither McMenemy nor Lechin were qualified to opine on the standard of care because their expert reports did not demonstrate that they had expertise in treating patients for polymyalgia rheumatica. The trial court declined to dismiss the case, and Shaikh appealed.

## Sufficiency of Expert Qualifications

In her sole issue on appeal, Shaikh challenges the trial court's denial of her motion to dismiss, saying that Rodriguez's experts are not qualified: they may know about prednisone and diabetes but have not shown that they know much about the autoimmune disease known as polymyalgia rheumatica (PMR).

Rodriguez counters that whether a physician who prescribes prednisone to a diabetic should monitor blood glucose levels is not an issue unique to specialists in this particular autoimmune disease. In her view, the management of a diabetic

patient is not restricted to one specialty. Her argument has support from prior cases involving prednisone.[1]

We review a trial court's ruling regarding whether a person is qualified to opine on the standard of care in an expert report for an abuse of discretion. *See Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 n.37 (Tex. 2017); *Pankaj v. Hernandez*, 695 S.W.3d 900, 919 (Tex. App.—Houston [1st Dist.] 2024, no pet.). We likewise review a ruling as to whether a person is qualified to opine on the issue of causation in an expert report for an abuse of discretion. *Puppala v. Perry*, 564 S.W.3d 190, 202 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Only one who qualifies as an expert may satisfy the Texas Medical Liability Act's report requirement. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5). Thus, a report made by an unqualified person does not constitute a good-faith effort to satisfy the Act's expert-report requirement. *Pankaj*, 695 S.W.3d at 919.

---

[1]     *See, e.g.*, *Gonzalez v. Eleje*, 734 S.W.3d 59, 70–72 (Tex. App.—El Paso 2026, no pet. h.) (rejecting similar attack on expert qualifications in case involving allegation that hematologist improperly increased prednisone dosage and concluding testifying expert was qualified even though expert was not hematologist because expert testified he was familiar with effects of prednisone on patients with infections and had "substantial training and experience in that field"); *Quinones v. Pin*, 298 S.W.3d 806, 812 (Tex. App.—Dallas 2009, no pet.) ("We conclude that Ginsberg establishes in his report that he has knowledge of the accepted standard of care for obtaining informed consent to the use of Prednisone, and that this standard does not vary according to the medical condition being treated.").

In a suit asserting a health care liability claim against a physician for injury to a patient, a person may qualify as an expert on the standard of care only if he is a physician who:

> (1)    is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
>
> (2)    has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3)    is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

TEX. CIV. PRAC. & REM. CODE § 74.401(a); *see also id.* § 74.351(r)(5)(A) (defining "expert" in context of witness opining that physician breached applicable standard of care as one who is qualified to testify under section 74.401). Relevant considerations in determining whether a witness is qualified based on training or experience are whether the witness (1) is board certified or "has other substantial training or experience in an area of medical practice relevant to the claim" and (2) is "actively practicing medicine in rendering medical care services relevant to the claim." *Id.* § 74.401(c).

"A physician is not qualified to testify as an expert on every medical question simply by virtue of being a medical doctor." *Pankaj*, 695 S.W.3d at 919. However, "the TMLA's test for 'expert qualifications should not be too narrowly drawn.'" *Benge v. Williams*, 548 S.W.3d 466, 472 (Tex. 2018) (quoting *Larson v. Downing*,

197 S.W.3d 303, 305 (Tex. 2006) (per curiam)). A physician need not specialize in the particular type of medical practice at issue in the case to qualify as an expert. *Pankaj*, 695 S.W.3d at 919; *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

The dispositive inquiry is whether the physician has expertise on "the very subject about which he opines." *Pankaj*, 695 S.W.3d at 919; *see Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996) (stating that focus is "on whether the expert's expertise goes to the very matter on which he or she is to give an opinion"). Generally, a physician who practices outside the specialty at issue may qualify as an expert under two circumstances: (1) he has practical knowledge of what is ordinarily done by physicians under circumstances like those that confronted the physician who is being sued; or (2) the subject matter is common to and equally recognized and developed in all fields of medical practice. *Pankaj*, 695 S.W.3d at 919–20; *Milner*, 575 S.W.3d at 62; *see also Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (stating that while expert need not practice in specialty at issue, expert must show he has knowledge, skill, experience, training, or education regarding issue before court).

In cases in which a plaintiff serves more than one expert report, we may "review the adequacy of reports in the aggregate." *Walker v. Baptist St. Anthony's Hosp.*, 703 S.W.3d 339, 343 (Tex. 2024) (per curiam) (quoting *Uriegas v. Kenmar*

*Residential HCS Servs., Inc.*, 675 S.W.3d 787, 790 (Tex. 2023) (per curiam)). Further, if one report suffices, we may decline to evaluate the sufficiency of additional reports. *See id.* at 341 ("Because we conclude that the reports from Drs. Tappan and Null are sufficient, we need not address the sufficiency of Nurse Beach's report . . . .").

Guided by these principles, we turn to the report by Dr. Lechin. In his report, he stated that, as a critical care and internal medicine specialist, he has more than "36 years of experience regularly treating patients requiring chronic use of corticosteroids to manage autoimmune conditions." He has personally "managed these conditions and prescribed corticosteroids for diabetic and non-diabetic patients with autoimmune diseases." He stated that he was "very familiar with the standards required of a provider who prescribes corticosteroids, including requirements to coordinate care and consider alternative course of treatment to reduce the risk of side effects of corticosteroids on diabetic patients with autoimmune diseases." He further added that the autoimmune condition in this case (PMR) is common, is not exclusively managed by rheumatologists, and can also be managed by primary care physicians or internal medicine specialists.

Given the report, the trial court acted within its discretion in finding Dr. Lechin qualified. The crux of Rodriguez's negligence claim is the prescription of prednisone to a patient with a pre-existing diabetes diagnosis and the monitoring of

the patient and her blood glucose levels following that prescription. Dr. Lechin's report supports a holding that, as we phrased it earlier, "he has practical knowledge of what is ordinarily done by physicians under circumstances like those that confronted the physician who is being sued." *Pankaj*, 695 S.W.3d at 920. This result aligns with the Dallas Court of Appeals' opinion in *Quinones v. Pin*, a case involving the prescription of prednisone to a patient with a specific type of kidney disease and which held that an expert can pass muster by having expertise in prednisone treatment: "[I]f Ginsberg possesses adequate expertise on the nature of the risks inherent in Prednisone therapy, section 74.401 is satisfied even if he does not possess special expertise specifically on the treatment of FSGS." 298 S.W.3d 806, 812 (Tex. App.—Dallas 2009, no pet.); *see also McKowen v. Ragston*, 263 S.W.3d 157, 165–68 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (discussing cases in which expert was qualified to render opinion on standard of care even though expert did not belong to same specialty as defendant doctor because expert did have experience and expertise concerning relevant issue in case).

Having found the report of Dr. Lechin sufficient, we need not pass on the amended report by Dr. McMenemy. *See Walker*, 703 S.W.3d at 341; *Doctors Hosp. v. Hernandez*, No. 01-10-00270-CV, 2010 WL 4121678, at *9 n.2 (Tex. App.— Houston [1st Dist.] Oct. 21, 2010, no pet.) (mem. op.) ("Having concluded the report

of Dr. Miller is adequate concerning both Doctors Hospital and Price, we need not address the adequacy of McManaman–Bridges's report.").

We overrule Shaikh's sole appellate issue.

## Conclusion

We affirm the trial court's order denying Shaikh's motion to dismiss.


David Gunn
Justice

Panel consists of Justices Gunn, Caughey, and Morgan.